IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KOMBEA CORPORATION,<br><br>                     Plaintiff,<br>v.<br><br>NOGUAR L.C.,<br>                     Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Case No. 2:13-CV-957  TS |

This matter is before the Court on Plaintiff KomBea Corporation's Motion for Partial Summary Judgment declaring the invalidity of United States Patents Nos. 8,503,619; 7,933,387; 8,438,494; and 7,640,510 under 35 U.S.C. § 101.  The Court heard oral argument on Plaintiff's Motion on December 9, 2014.  For the reasons discussed more fully below, the Court will grant Plaintiff's Motion.

## I.  BACKGROUND

Defendant Noguar L.C. ("Noguar") holds United States Patents Nos. 8,503,619 (the "'619 patent"); 7,933,387 (the "'387 patent"); 8,438,494 (the "'494 patent"); and 7,640,510 (the "'510 patent") (collectively the "patents-in-suit").  The patents-in-suit generally pertain to a telemarketing system that allows an agent to use prerecorded scripts, live voice, and interjections during a telemarketing call to tailor the call to potential customers while giving the impression that the conversation is person-to-person.  The '619 patent relates to a system that allows a telemarketing agent to manage the interaction between the agent and potential customer using a computer.  The '387 patent relates to a system that allows a telemarketing agent to selectively

respond to a potential customer with either a live-voice or prerecorded script. The '494 patent relates to a method of creating an agent-controlled computerized telemarketing sales presentation comprised of prerecorded audio files and the agent's live interjections.  The '510 patent relates to a method of using personal information gathered in the call to select scripts that relate to the potential customer.  Collectively, the patents-in-suit relate to a broader system of automating telemarketing calls while allowing a telemarketing agent to personalize the calls to fit the needs of the potential customer and give the impression that the potential customer is speaking to a real salesperson, as opposed to listening to a recorded sales presentation.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[2]  "Once the movant has made this showing, the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial."[3]

A patent is presumed valid, and each claim of a patent is presumed valid independently of the validity of other claims.[4]  "The burden of establishing invalidity of a patent or any claim

---

[1] Fed. R. Civ. P. 56(a).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted).

[3] *Novartis Corp. v. Ben Venue Lab., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

[4] 35 U.S.C. § 282.

thereof shall rest on the party asserting such invalidity."[5]  Plaintiff, as the party asserting

invalidity, must overcome the presumption of validity by clear and convincing evidence.[6]  This

burden applies to a motion for summary judgment seeking invalidity.[7]

## III.  DISCUSSION

Section 101 of the Patent Act defines patent eligible subject matter.  It provides,

"Whoever invents or discovers any new and useful process, machine, manufacture, or

composition of matter, or any new and useful improvement thereof, may obtain a patent therefor,

subject to the conditions and requirements of this title."[8]  The Supreme Court has "long held that

[§ 101] contains an important implicit exception: Laws of nature, natural phenomena, and

abstract ideas are not patentable."[9]  However, the Court "tread[s] carefully in construing this

exclusionary principle lest it swallow all of patent law.  At some level, all inventions . . .

embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."[10]

"[A]n invention is not rendered ineligible for patent simply because it involves an abstract

concept.  Applications of such concepts to a new and useful end . . . remain eligible for patent

protection."[11]  Therefore, the Court distinguishes between "patents that claim the building blocks

of human ingenuity and those that integrate the building blocks into something more."[12]

---

[5] *Id.*

[6] *See Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed. Cir. 2002).

[7] *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991).

[8] 35 U.S.C. § 101.

[9] *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (citations and internal quotation marks omitted).

[10] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (citations and internal quotation marks omitted).

[11] *Id.*

[12] *Id.*

To make the distinction between those patents that claim the building blocks of human ingenuity and those that claim something more, the Court uses the two-step analysis found in *Mayo Collaborative Services v. Prometheus Laboratories, Inc*.  "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts.  If so, we then ask, 'what else is there in the claims before us?'"[13]  In the second step of the *Mayo* analysis, the Court considers the elements of the patent's claims, both individually and in their entirety, to "determine whether the additional elements transform the nature of the claim into a patent-eligible application."[14]

Plaintiff argues that Defendant's "claimed invention is nothing more than an abstract idea applied through a generic computer" and is not patentable subject matter.[15]  Defendant argues that "the genius of the method . . . is us[ing] a computer to dramatically increase the efficiency of the telemarketing process—enabling a low-skilled operator to conduct a real-time conversation with a contact in such a way that the contact perceives they are actually talking to a live agent."[16]  Additionally, at the hearing, Defendant argued that Plaintiff's patents are unique solutions to unique problems and therefore patent-eligible subject matter.

The Court will apply the two-step *Mayo* analysis set forth above to determine the patent eligibility of the patents-in-suit.  Doing so, the Court finds that the patents-in-suit are similar to those discussed in *Bilski v. Kappos*[17] and *Alice Corp. Pty. Ltd. v. CLS Bank International* and that they are directed toward abstract ideas.  The Court finds support for its analysis in recent

---

[13] *Id.* at 2355 (quoting *Mayo*, 132 S. Ct. at 1296–97).

[14] *Id.* (citations and internal quotation marks omitted).

[15] Docket No. 34, at 1.

[16] Docket No. 33, at 11.

[17] 561 U.S. 593 (2010).

applications of the concepts discussed in *Bilski* and *Alice* by several district courts.  Second, considering each patent's claims, both collectively and individually, the Court finds that each of the patents-in-suit falls short of transforming the patents to patent-eligible subject matter.

In *Bilski*, the Supreme Court considered whether patents that related to hedging risk in a trading market were directed to patent-ineligible concepts.[18]  The Court found that "[h]edging is a fundamental economic practice long prevalent in our system of commerce" and that "[t]he concept of hedging is an abstract idea."[19]  In *Alice*, the Court considered whether patent claims related to mitigating settlement risk were directed toward patent-ineligible concepts.[20]  The Court found, "Like the risk hedging in *Bilski*, the concept of intermediated settlement is a fundamental economic practice long prevalent in our system of commerce."[21]  Therefore, the Court found the patents in *Alice* were directed toward abstract ideas.  The Court took the opportunity to explain further its rationale in *Bilski* saying,

> The concept of risk hedging we identified as an abstract idea . . . cannot be described as a preexisting, fundamental truth.  The patents in *Bilski* simply involved a series of steps instructing how to hedge risk. Although hedging is a longstanding commercial practice, it is a method of organizing human activity, not a truth about the natural world that has always existed.[22]

Like the patents in *Bilski* and *Alice*, the patents-in-suit relate to a fundamental economic practice and a method of organizing human activity.  Specifically, the concepts contemplated by the patents-in-suit are directed toward basic sales techniques executed with the aid of a computer to create efficiencies.  Defendant describes the '619 patent as a method that allows a

---

[18] *Id.* at 599.

[19] *Id.* at 611–12 (citations and internal quotation marks omitted).

[20] *Alice*, 134 S. Ct. at 2355.

[21] *Id.* at 2356 (citations and internal quotation marks omitted).

[22] *Id.* (citations and internal quotation marks omitted).

telemarketing agent to "choose between prerecorded scripts that elicit a response from the contact and prerecorded conversation content."[23]   Allowing a telemarketing sales agent to choose between scripts to make a sales call more effective is a basic, time-honored sales technique.   As such, the claims described in the '619 patent are directed toward a fundamental economic concept and fall within the *Bilski* and *Alice* analyses.

The '387 patent is similar to the '619 patent in that it describes a method that allows a telemarketing agent to choose between prerecorded scripted responses and recorded interjections.[24]   The patent also provides for using a computer to enable the agent to efficiently make, select, and play recorded responses and interjections.   The patent also allows for the agent to use prerecorded scripts that are associated with responses to questions with finite answers. Generally, the patent relates to a method of making a prerecorded-scripted sales presentation sound conversational, which is a basic technique used in any effective sales presentation.   As such, the '387 patent relates to a fundamental economic practice like those discussed in *Bilski* and *Alice*.

The '494 patent relates to an apparatus, system, and method of creating an agent-controlled computerized telemarketing sales presentation comprised of prerecorded audio and the agent's live interjections.[25]   The substance of the '494 patent's claims are similar to those related in the '619 and '387 patents and relate to providing prerecorded scripts and allowing a telemarketing agent to choose which scripts to present to the potential customer.   Additionally, the patent allows for the agent to record a script specifically tailored to a potential customer. Essentially, the '494 patent's claims relate to using prerecorded scripts and selecting the

---

[23] Docket No. 33, at 13; U.S. Patent No. 8,503,619 (filed Apr. 25, 2011).

[24] U.S. Patent No. 7,933,387 (filed Aug. 1, 2001).

[25] U.S. Patent No. 8,438,494 (filed Dec. 28, 2009).

appropriate scripts that best meet the needs of a customer to create an effective sales call.  Like

the concepts discussed in *Bilski* and *Alice*, creating an effective sales presentation is a

fundamental economic concept and training telemarketing agents to employ these concepts using

a computer is a method of organizing human activity.  Therefore, the '494 patent is directed

toward an abstract idea.

The '510 patent claims a method for presenting prerecorded scripts to potential customers

that reference personal information about the potential customer received earlier in the call.[26]

The substance of the '510 patent's claims include obtaining personal information such as marital

status or family status, storing such information in a customer profile, and allowing the agent to

use either a live-voice or prerecorded interjection referencing the personal information.  Again,

the claims are directed toward an abstract idea that is fundamental in sales—making a personal

connection with a potential customer to make the call more effective.  While the patent's claims

describe a method that may make the personal connection more efficiently and help the

prerecorded script seem like a real conversation, the patent is ultimately claiming a well-

understood sales technique.  Since the '510 patent merely claims a method for organizing human

behavior and fundamental economic concepts it is directed toward an abstract idea.

Defendant argues, "The real genius of Noguar's inventions is the recognition that by

combining a small number of interjections with prerecorded sales scripts, the call actually sounds

live."[27]  Additionally, Defendant argues that eliciting personal information and integrating that

information into the sales presentation using a computer-guided decision tree adds to the realism

---

[26] U.S. Patent No. 7,640,510 (filed Mar. 28, 2005).

[27] Docket No. 33, at 17.

of the call.[28]  These concepts, Defendant argues, are not laws of nature, natural phenomena, or abstract ideas, but they combine building blocks of human ingenuity into something more.[29]

While it is true that the patents do not claim traditionally patent-ineligible subject matter, they do claim the fundamental economic practices involved in an effective sales call.  The claims are also a method for organizing and limiting the choices and activity of a telemarketing sales agent so that the agent presents the prerecorded script more efficiently while mimicking real conversation.  The Supreme Court's discussion of *Bilski* in *Alice* is instructive.  The Court said that "the concept of risk hedging we identified as an abstract idea . . . cannot be described as a preexisting, fundamental truth" but as "a longstanding commercial practice, . . . a method of organizing human activity."[30]  Since the telemarketing techniques the patents-in-suit claim are longstanding commercial practices and a method of organizing human activity, the Court finds that the patents-in-suit relate to abstract ideas and thus relate to patent-ineligible subject matter.

The Federal Circuit and several district courts have begun applying *Bilski* and *Alice*'s analysis to determine subject matter patentability and, as previously noted, the Court finds support of its analysis in these cases—several of which are particularly instructive.

In *buySAFE, Inc. v. Google, Inc.*,[31] the Federal Circuit considered whether a patent relating to a contractual performance guarantee was directed toward an abstract idea.[32]  The court found that this concept was within *Bilski* and *Alice*'s boundaries and that the attempted

---

[28] *Id.*

[29] *Id.*

[30] *Alice*, 134 S. Ct. 2356 (citations and internal quotation marks omitted).

[31] 765 F.3d 1350 (Fed. Cir. 2014).

[32] *Id.* at 1354–55.

narrowing of long-familiar commercial transactions does not make the idea non-abstract.[33]  Like the performance guarantee concepts contemplated in *buySAFE*, the sales techniques claimed in the patents-in-suit are long-familiar in telemarketing sales.

In *Ultramercial, Inc. v. Hulu, LLC*,[34] the Federal Circuit considered whether a patent that was directed toward the concept of displaying an advertisement in exchange for access to copyrighted media were patentable.[35]  Affirming the district court, the Federal Circuit found that the concept of using advertising as an exchange or currency was an abstract idea and consequently not patentable, stating that the patent's "steps recites an abstraction—an idea, having no particular concrete or tangible form."[36]  The patents-in-suit are similar to that discussed in *Ultramercial* because they claim intangible sales techniques without any particular concrete form that are employed in a variety of ways by call centers.

Most recently, however, in *DDR Holdings, LLC v. Hotels.com, L.P.*,[37] the Federal Circuit reviewed patents "directed to systems and methods of generating a composite web page that combines certain visual elements of a host website with content of a third-party merchant."[38]  The court found that the patents were directed toward more than an abstract idea or fundamental business practice, but solved a problem particular to the internet.[39]  The court found, "Instead of the computer network operating in its normal, expected manner . . . the claimed system generates

---

[33] *Id.*

[34] No. 2010-1544, 2014 WL 5904902 (Fed. Cir. Nov. 14, 2014).

[35] *Id.* at *4.

[36] *Id.*

[37] No. 2013-1505, 2014 WL 6845152 (Fed. Cir. Dec. 5, 2014).

[38] *Id.* at *1 (internal quotation marks omitted).

[39] *Id.* at *10 (stating "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks").

and directs the visitor to [a] hybrid web page that presents product information from the third-party and visual 'look and feel' elements from the host website."[40]  Therefore, because the patents were directed toward solving a new problem, particular to the internet, and solved the problem beyond "routine and conventional use of the internet," the court found that the patents were not directed toward an abstract idea.[41]

The patents-in-suit are distinguishable from the patents in *DDR Holdings*.  First, the patents-in-suit are not directed toward solving a new problem, unique to a technological field.  Rather the patents-in-suit are directed toward performing fundamental commercial practices more efficiently.  Second, the patents-in-suit are not a new solution to a unique problem; they only employ a combination of sales techniques and basic telemarketing technology to create an efficient system.  Lastly, the patents-in-suit do not describe a new way of manipulating technology beyond its conventional or routine use.  For these reasons, the patents-in-suit are more akin to those described in *Bilski* and *Alice*, than the patents at issue in *DDR Holdings*.

In addition to the Federal Circuit cases outlined above, several district courts have made patentability inquiries applying *Bilski* and *Alice*.  In *Tuxis Technologies, LLC v. Amazon.com, Inc.*,[42] the patent at issue related to the concept of upselling based on information obtained from a primary sale.[43]  The court found that the concept of offering something to a customer based on his or her interest in something else is a fundamental economic concept—"a marketing technique as old as the field itself"—and consequently an abstract idea.[44]  Like the upselling patent at issue

---

[40] *Id.* at *12.

[41] *Id.*

[42] No. 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014).

[43] *Id.* at *1–*2.

[44] *Id.* at *3.

in *Tuxis*, the patents-in-suit relate to the fundamental economic concepts that are the basic tools for creating an effective sales presentation—using prepared scripts to help the telemarketing sales agent, attempting to make the sales pitch feel like a conversation, and using personal information to tailor the presentation to the potential customer.

In *Open Text S.A. v. Alfresco Software Ltd.*,[45] the court held that patents pertaining to a form of the concept of interacting with customers for marketing purposes were directed toward an abstract idea.[46]  The district court reasoned, "The claims challenged here fall well within the conceptual zone of *Bilski* and *Alice*, and amount to abstract ideas.  They recite a very simple computer-driven method to engage in the commonplace and time-honored practice of interacting with customers to promote marketing and sales."[47]  Much like the patents at issue in *Open Text*, the patents-in-suit relate to commonplace and time-honored techniques used to promote telemarketing sales and fall well within the conceptual zone of *Bilski* and *Alice*.

For the reasons stated above, the Court finds that the patents-in-suit are similar to those in *Bilski* and *Alice* and are directed toward an abstract idea.[48]

---

[45] No. 13-CV-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014).

[46] *Id.* at *4.

[47] *Id.*

[48] In addition to the discussed cases, the Court's conclusion also finds support in decisions by other federal district courts.  *Cal. Inst. of Tech. v. Hughes Commc'ns Inc.*, No. 2:13-cv-07245-MRP-JEM, 2014 WL 5661290, at *13 (C.D. Cal. Nov. 3, 2014) (finding claims directed toward encoding and decoding data for error correction to abstract); *Enfish v. Microsoft Corp.*, No. 2:12-CV-07360-MRP-MRW, 2014 WL 5661456, at *6–*7 (C.D. Cal. Nov. 3, 2014) (finding claims directed toward storing, organizing, and retrieving memory in a logical table to be an abstract idea); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 1:10-CV-910 (LMB/TRJ), 2014 WL 5430956, at *6 (E.D. Va. Oct. 24, 2014) (finding that "correlating two network accounting records to enhance the first record" is an abstract idea); *Cogent Med., Inc. v. Elsevier Inc.*, Nos. C-1304479 RMW, C-13-4483, C-13-4486, 2014 WL 4966326, at *4 (N.D. Cal. Sept. 30, 2014) (finding that claims directed towards maintaining and searching a library of information to be abstract); *Card Verification Solutions, LLC v. Citigroup Inc.*, No. 13 C 6339, 2014 WL 4922524, at *4 (N.D. Ill. Sept. 29, 2014) (finding "passing along confidential

Although the patents-in-suit are directed toward an abstract idea, the patents-in-suit would still be valid if the claims, individually or collectively, transformed the abstract idea into a patent eligible invention.[49]

To determine whether the patents' claims transform the abstract ideas into patent-eligible inventions, the Court considers whether the patent claims "contain an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application."[50] "A claim

---

information through a trusted, third-party intermediary to ensure both that a consumer can complete the transaction and that the necessary confidential information remains secure" to be an abstract idea); *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, No. 8:11-cv-2826-T-23TBM, 2014 WL 4540319, at *4 (M.D. Fla. Sept. 11, 2014) (finding "a method of and a system of automated saving or automated charitable giving" to be directed toward an abstract idea); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-742-GW(AJWx), 2014 WL 4407592, at *7 (C.D. Cal. Sept. 4, 2014) (finding claims directed to the "idea of asking someone whether they want to perform a task, and if they do, waiting for them to complete it, and if they do not, asking someone else" to be abstract); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-65, 2014 WL 4364848, at *8 (E.D. Tex. Sept. 3, 2014) (finding "the conversion of loyalty award points of one vendor into loyalty award points of another" to be an abstract idea); *Walker Digital, LLC v. Google, Inc.*, C.A. No. 11-318-LPS, 2014 WL 4365245, at *5 (D. Del. Sept. 3, 2014) (finding patents dealing with the exchange of information about people to facilitate employment searches to be directed toward an abstract idea "historically practiced by matchmakers and headhunters . . . [where] all of [the patent's] steps could be performed (and have been performed) by human beings interacting with one another"); *CMG Fin. Servs., Inc. v. Pac. Trust Bank, F.S.B.*, No. CV 11-10344 PSG (MRWx), 2014 WL 4922349, at *7 (C.D. Cal. Aug. 29, 2014) (finding that claims "directed toward the idea of a mortgagee paying down a mortgage early when funds are available and borrowing funds as needed to reduce the overall interest charged by the mortgage" to be abstract idea); *Data Distrib. Techs., LLC v. BRER Affiliates, Inc.*, No. 12-4878 (JBS/KMW), 2014 WL 4162765, at *11 (D.N.J. Aug. 19, 2014) (finding patents directed toward "maintaining a database and updating users about new information" to be abstract); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, No. 12-205-RGA, 2014 WL 3542055, at *3–*4 (D. Del. July 16, 2014) (finding that a process that receives a request for a decision and determines whether a decision should be made is an abstract idea); *DietGoal Innovations LLC v. Bravo Media LLC*, No. 13 Civ. 8391 (PAE), 2014 WL 3582914, at *10 (S.D.N.Y July 8, 2014) (finding "a computer program that allows the user to create meals from a database of food objects according to his or her preferences and dietary goals" to be an abstract idea).

[49] *Mayo*, 132 S. Ct. at 1298.

[50] *Alice*, 134 S. Ct. at 2357 (citations and internal quotation marks omitted).

that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea."[51]

In *Mayo*, the Court examined whether the claims of a patent that was directed toward an abstract idea were sufficiently inventive.  The Court found that process claims that amounted to "nothing significantly more than an instruction to doctors to apply the [abstract idea]" were insufficient to be considered an inventive concept.[52]  Additionally, in *Alice*, the Court examined claims that executed an abstract idea using a computer.  The Court found that "the mere recitation of a generic computer cannot transform a patent-ineligible idea into a patent-eligible invention."[53]

Plaintiff argues that Defendant's patents are invalid because the patents simply apply abstract ideas through a computer.[54]  Additionally, Plaintiff argues that "merely using a computer to increase efficiency is not enough to transform the abstract idea of using interjections to mimic conversation into a patentable concept."[55]  The computer, Plaintiff argues, performs nothing more than playing the appropriate scripts and interjections that the telemarketing agent selects in order to mimic conversation.[56]

Defendant argues that it is "not . . . accurate to say that Noguar implements these steps on a computer.  The process is not . . . done entirely with a computer—it still requires participation of the agent.  The computer is just provided as a communication tool.  The agent still interacts

---

[51] *Id.*

[52] *Mayo*, 132 S. Ct. at 1298.

[53] *Alice*, 134 S. Ct. at 2358.

[54] Docket No. 34, at 6.

[55] *Id.* at 6–7.

[56] *Id.* at 8 (citing *Tuxis*, 2014 WL 4382446, at *5).

with the contact."[57]  Essentially, Defendant argues that the patents do not claim abstract ideas implemented by computers, but that the patents claim telemarketing sales techniques executed by a telemarketing agent with the assistance of a computer.

If the role of the computer is as minor as Defendant claims, Defendant's patents are simply abstract ideas relating to a fundamental economic practice or organization of human behavior and nothing more.  If, as in *Alice*, abstract concepts implemented by computers are not sufficiently inventive, then executing abstract concepts with the aid of computers is not sufficiently inventive.  Although using prerecorded scripts, prerecorded and live interjections, and personal information to mimic real conversation may be a more effective sales technique, it is ultimately a method organizing the behavior of a telemarketing sales agent.  Like the instruction to doctors in *Mayo* to apply the scientific principle, the patents-in-suit are a set of instructions to implement fundamental sales techniques with the aid of a computer.  Other than the recitation of the above discussed abstract ideas and how to execute those ideas with the help of a computer, the claims of the patents-in-suit describe nothing more.  On this basis, the Court can conclude that the patents-in-suit are not eligible for protection.

Before concluding, the Court will address an argument made by Defendant at oral argument.  Defendant argued that the patents-in-suit are "the solution of a problem that's been tackled for years and . . . never been effectively solved."  Further, Defendant argued that the patents-in-suit have an inventive concept because they do not "merely [implement] with a computer something that has been done by hand before because it never has been able to have been done manually with the kind of accuracy and all of the other parameters that are required by these systems.  You know, it was just heretofore impossible."  It is immaterial to the Court's

---

[57] Docket No. 33, at 16.

analysis whether anyone has combined the sales techniques within the claimed patents as accurately and efficiently as Defendant.  In *Bancorp Services, LLC v. Sun Life Assurance Co. of Canada*,[58] the Federal Circuit held that "the fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter."[59]  In this case, the fact that Defendant's patents-in-suit are directed toward abstract ideas that are more efficiently executed with the use of a generic computer does not make the patents eligible for protection.  Therefore, the Court finds that the claims, individually and collectively, do not transform the abstract ideas within the claims into an inventive concept.  As such, the patents-in-suit fail to transform the abstract ideas they claim into patent-eligible subject matter.

For the reasons discussed above, the Court finds that Plaintiff has met its burden of demonstrating clear and convincing evidence that the presumed valid patents-in-suit are, in fact, invalid under 35 U.S.C. § 101.

### III.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 27) is GRANTED.

DATED December 23, 2014.

BY THE COURT:

_____

TED STEWART
United States District Judge

---

[58] 687 F.3d 1266 (Fed. Cir. 2012).

[59] *Id.* at 1278.

15